[Cite as *State v. Gaffin*, 2017-Ohio-2935.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 16CA1027 |
| v. | : | |
| | | DECISION AND |
| KEVIN GAFFIN, | : | JUDGMENT ENTRY |
| Defendant-Appellant. | : | RELEASED 05/17/2017 |

APPEARANCES:

William R. Gallagher and Hal R. Arenstein, Arenstein & Gallagher, Cincinnati, Ohio, and Elizabeth Conkin, Of Counsel, for Appellant.

D. Vincent Faris, Clermont County Prosecuting Attorney, and Nick Horton, Clermont County Assistant Prosecuting Attorney, Batavia, Ohio, for Appellee.

Hoover, J.

{¶ 1} Defendant-Appellant, Kevin Gaffin, appeals the judgment of the Adams County Court of Common Pleas convicting him of three counts of rape, three counts of sexual battery, and one count of felonious assault and sentencing him to life in prison without the possibility of parole. On appeal, Gaffin claims that the trial court abused its discretion in handling juror misconduct that was discovered during deliberations and ultimately led to a juror being excused. Specifically, he claims that the trial court should have questioned the remaining jurors to determine whether they were affected by the misconduct. He further claims that he received ineffective assistance of counsel.

{¶ 2} Upon review of the record, we conclude that because Gaffin neither asked the trial court to examine the remaining jurors to determine whether they were affected

by the misconduct nor expressed dissatisfaction with the trial court's explanation of the situation to the jury, he waived all but plain error; and the trial court did not commit plain error when it questioned the juror about the misconduct, sequestered the juror while it considered how to handle the misconduct, excused the juror and replaced him with an alternate, and instructed the jury to begin deliberations anew. We further conclude that because Gaffin failed to show how he was prejudiced by defense counsel's alleged deficiencies, his claim of ineffective assistance of counsel fails also; and we need not consider whether trial counsel's performance was deficient.

{¶ 3} Accordingly, we overrule Gaffin's assignments of error and affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 4} On July 23, 2015, the Adams County Grand Jury returned a seven-count indictment against Gaffin. Gaffin was charged with: (1) three counts of rape in violation of R.C. 2907.02(A)(1)(b), each felonies of the first degree, with specifications; (2) three counts of sexual battery in violation of R.C. 2907.03(A)(5), each felonies of the second degree, with specifications; and (3) one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. It was alleged that Gaffin sexually assaulted his stepson, R.A., a minor, on two occasions when R.A. was only six or seven years old. Gaffin pleaded not guilty.

{¶ 5} On June 14, 2016, the case proceeded to trial; and more was learned about the alleged abuse. The following is a recitation of facts as obtained from the trial testimony.

{¶ 6} In the summer of 2006, Gaffin moved in with R.A. and his mother in their home in Adams County, Ohio. In early 2008, Gaffin took R.A. to a barn outside their home, forced him to the floor in a prone position, restrained his wrists with cinderblocks, and anally and orally raped the then six-year-old R.A. Gaffin threatened to murder R.A.'s mother and grandparents if R.A. told anyone what had happened, and further threatened R.A. that he would be sent to the Children's Home if he told what had happened. In the next day or two, R.A. went to his sixteen-year-old cousin's house to ride four-wheelers. R.A.'s cousin noticed that blood was leaking from R.A.'s anus after he used the restroom. When asked about the blood, R.A. told his cousin he could not tell what happened, before eventually admitting that Gaffin had hurt him. The cousin reported R.A.'s injuries and statements to her mother. R.A.'s aunt then contacted Adam's County Children's Services. When R.A. refused to repeat the admission, Children Services dropped the report as "unsubstantiated."

{¶ 7} In December 2008, Gaffin anally raped R.A. again, this time in the living room of their home. Gaffin again threatened to murder R.A.'s mother and grandparents, and repeated his threat that R.A. would end up at an orphanage if he told what had occurred. In 2009, Gaffin married R.A.'s mother and became his stepfather. Gaffin often disciplined R.A. and punished him for being a "mommy's boy" and for playing with stuffed animals or a kitchen set. Gaffin also called R.A. "[q]ueer, puss boy, * * * fagget [sic], mommy's boy, [and] mommy's baby." R.A. indicated that he was scared of Gaffin. R.A. saw Gaffin argue with his mother and put hands on her and stated that he did not tell anyone of the abuse because of the threats made by Gaffin. In November 2012, Gaffin grabbed R.A.'s throat, dragged him out of the house, and struck him on the head. This

caused R.A.'s mother to kick Gaffin out of the house and to initiate divorce proceedings. However, Gaffin continued to come by the house.

{¶ 8} In February 2015, R.A. disclosed Gaffin's abuse to his school's counselor. Children's Services was contacted regarding the physical and sexual abuse. R.A. was also taken to the Mayerson Center for evaluation. In March 2015, R.A. was interviewed at the Mayerson Center for purposes of referral and further medical treatment and counseling. At that time, R.A. disclosed the abuse by Gaffin. Eventually, R.A. was diagnosed with PTSD by his counselor John Roflow. At the time of trial and since February 2015, Roflow had met with R.A. around 50 times.

{¶ 9} After three days of hearing evidence, the jury retired to deliberate. However, about an hour into deliberations, defense counsel learned that one of the jurors made an improper comment earlier in the day during a break in the case. It was alleged that the juror told a deputy that he had already made up his mind about the case. When defense counsel brought the comment to the trial court's attention, the trial court interrupted deliberations and questioned the juror. The juror admitted to making the improper comment; but he clarified, "I was just thinking about it. I hadn't totally made up my mind yet. That's honest." Trial Tr., p. 763. He further stated, "I didn't talk, discuss it with anybody in there at all." *Id*.

{¶ 10} Thereafter, the trial court engaged in a lengthy colloquy with the juror in which it inquired whether he was making the appropriate considerations. The juror indicated that he was considering the evidence, the arguments, and the trial court's instructions.

{¶ 11} Despite these affirmations, the State requested that the juror be excused;
and defense counsel objected:

[DEFENSE COUNSEL]: * * * I don't believe that, that he in any way
affects, based on what I heard it sounded like it was a comment in passing
and it's not affected his ability to convene with the jurors, hear what they
have to say, make statements himself and reach a decision based on their
deliberations and the evidence that's been presented.

[THE PROSECUTOR]: Your Honor, I'll just finish by saying I don't
think it could be a more clear statement, I have my mind made up.

*Id*. at 768.

{¶ 12} Ultimately, the trial court decided to excuse the juror and replace
him with an alternate juror. The colloquy continued:

[DEFENSE COUNSEL]: Your Honor, just for the record we renew our
objection.

The Court: You're objecting?

[DEFENSE COUNSEL]: Yes.

The Court: Okay.

[DEFENSE COUNSEL]: And just to add to that, Your Honor, I think the
fear is, is . . .

The Court: You brought this up, [Counselor]. If you didn't want him off I
would have thought you wouldn't have wanted to bring it up.

[DEFENSE COUNSEL]: But it's not a fear of . . . it's more of a fear of he's already been back there deliberating and it's not a matter where we can explain to the jury that we [sic] felt ill or . . .

The Court: I'll handle that.

[DEFENSE COUNSEL]: Okay.

*Id*. at 768-769.

{¶ 13} Then, the trial court brought the jury in and explained the situation: Ladies and gentleman, I had to stop deliberations and deal with a situation. And the cause of the circumstances, [Juror] Hayslip, it was necessary for him to be excused. And so we've called in [Juror] Adams. * * * So [Juror] Adams is replacing [Juror] Hayslip. Now the deliberation in this case has to occur between all 12. And I know you've been discussing the matter for, oh, an hour plus. You have to stop and start over. * * * Basically just start over like you haven't done anything and go from there. * * * But it's necessary that a verdict be reached in all of these counts by all 12 and since [Juror] Adams was not involved in the first hour plus the discussions those need to start from the beginning * * *.

*Id*. at 772-773.

{¶ 14} Thereafter, the jury retired to deliberate; and forty minutes later, the jury returned a guilty verdict on each count.

{¶ 15} On June 17, 2016, Gaffin was sentenced to life without the possibility of parole. His convictions and sentences were journalized by way of entry later that day.

{¶ 16} Gaffin timely appealed.

## II. Assignments of Error

{¶ 17} Gaffin presents the following assignments of error for our review:

Assignment of Error No. I

> THE TRIAL COURT VIOLATED MR. GAFFIN'S RIGHT TO A FAIR
> TRIAL, AS GUARANTEED BY THE CONSTITUTIONS OF THE
> UNITED STATES AND OHIO, BY FAILING TO CONDUCT A VOIR
> DIRE OF THE JURY TO ENSURE THE JUROR'S MISCONDUCT
> HAD NOT INFECTED THE JURY.

Assignment of Error No. II

> THE CUMULATIVE EFFECT OF DEFENSE COUNSEL'S ERRORS
> VIOLATED MR. GAFFIN'S RIGHT TO EFFECTIVE ASSISTANCE
> OF COUNSEL, AS GUARANTEED BY THE UNITED STATES
> CONSTITUTION AND THE CONSTITUTION OF THE STATE OF
> OHIO.

### III. Law and Analysis

### A. Juror Misconduct

{¶ 18} In his first assignment of error, Gaffin claims that the trial court erred in handling juror misconduct that was discovered during deliberations and ultimately led to a juror being excused. Specifically, Gaffin argues that the trial court should have questioned the remaining jurors to determine whether they were affected by the misconduct.

### 1. Standard of Review

{¶ 19} "As a reviewing court, we show deference to the trial judge, who sees and hears the events and thus is in a better position to accurately evaluate the situation and determine the appropriate scope of inquiry." *State v. Hessler*, 90 Ohio St.3d 108, 115-116, 734 N.E.2d 1237 (2000), citing *State v. Huertas*, 51 Ohio St.3d 22, 29, 553 N.E.2d 1058 (1990). "Therefore, we employ an abuse-of-discretion standard and will not reverse

the trial court unless it has handled the alleged juror misconduct * * * in an 'unreasonable, arbitrary, or unconscionable' manner." *Id*. at 116, quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "[W]hen a juror refuses to consider the evidence or forms an opinion as to guilt or innocence before all the evidence is presented, such activity constitutes misconduct." *State v. Combs,* 5th Dist. Stark No. 2001CA00222, 2002 WL 391688, *3 (Mar. 11, 2002), citing *State v. Taylor*, 73 Ohio App.3d 827, 831, 598 N.E.2d 818 (4th Dist.1991).

## 2. Gaffin Waived All but Plain Error

{¶ 20} "Section 5, Article I of the Ohio Constitution guarantees the right to a trial by jury, and this right 'carries with it by necessary implication the right to trial by a jury composed of unbiased and unprejudiced jurors.' " *Hessler* at 133, quoting *Lingafelter v. Moore*, 95 Ohio St. 384, 117 N.E. 16 (1917), paragraph one of the syllabus. Indeed, "the right to be tried before a jury capable and willing to decide a case solely on the evidence before it is a cornerstone of our justice system." *Cunningham v. St. Alexis Hosp. Med. Ctr.*, 143 Ohio App.3d 353, 374, 758 N.E.2d 188 (8th Dist.2001), citing *McIlwain v. United States*, 464 U.S. 972, 104 S.Ct. 409, 78 L.Ed.2d 349 (1983). " 'This precious right is denigrated when a [judgment] resting upon deliberations tainted by a juror's * * * impropriety is allowed to stand.' " *Id.,* quoting *McIlwain* at 975.

{¶ 21} In *State v. Sanders*, the Ohio Supreme Court considered whether a defendant's juror-misconduct claim had been preserved for appeal. 92 Ohio St.3d 245, 750 N.E.2d 90 (2001). There, the defendant was on trial for murders that occurred during the 1993 prison riot at the Southern Ohio Correctional Facility. During a sidebar conference at trial, defense counsel alleged that a juror appeared to have fallen asleep

while the prosecution was playing tape-recorded phone conversations between inmate negotiators and DRC negotiators. *Id.* at 252. Defense counsel claimed that the juror's eyes were shut for about an hour and fifteen minutes, and that the juror was motionless for half an hour. *Id.* After observing similar conduct, the trial court told the jury that there was "too much sleeping going on. And I'm not going to tolerate it anymore. I know it's tedious, but you're going to have to all be alert." *Id.* at 253.

{¶ 22} On appeal, the defendant argued that having a juror asleep during trial denied him due process, and that the trial judge should have replaced the juror. *Id.* at 253. In the alternative, the defendant argued that the trial court should have examined the juror to determine whether she was sleeping and what she missed. *Id.*

{¶ 23} Ultimately, the Court concluded that the defendant's claim was waived. It explained, "[The defendant] did not request either remedy at trial, nor did he express dissatisfaction with the trial judge's handling of the matter." *Id.,* citing *United States v. Kimberlin*, 805 F.2d 210, 244 (7th Cir.1986). "Thus, in the absence of plain error, this claim is waived." *Id.*, citing *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968).

{¶ 24} Like the defendant in *Sanders*, Gaffin neither asked the trial court to examine the remaining jurors to determine whether they were affected by the misconduct nor expressed dissatisfaction with the trial court's explanation of the situation to the jury. The only objection Gaffin made was to the trial court's decision to excuse the juror; and Gaffin is not arguing that the trial court erred with respect to that decision. Thus, absent plain error, Gaffin's claim is waived.

**3. The Trial Court Did Not Commit Plain Error in Handling the Juror Misconduct**

{¶ 25} For a reviewing court to find plain error: (1) there must be an error, i.e., "a deviation from a legal rule"; (2) the error must be plain, i.e., "an 'obvious' defect in the trial proceedings"; and (3) the error must have affected "substantial rights," i.e., it must have affected the outcome of the proceedings. *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "[T]he burden of demonstrating plain error is on the party asserting it." *State v. Davis,* 116 Ohio St.3d 404, 2008–Ohio–2, 880 N.E.2d 31, ¶ 378. "We take notice of plain error with the utmost of caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Merryman,* 4th Dist. Athens No. 12CA28, 2013–Ohio–4810, ¶ 49.

{¶ 26} Plain error does not exist here. While the trial court could have examined the remaining jurors to determine whether they were affected by the misconduct, the excused juror indicated that he had not discussed the nature of his comment with anyone. Thus, the trial court had no reason to believe that the remaining jurors were affected by the misconduct. Furthermore, the excused juror was sequestered from the remaining jurors once his misconduct was discovered thereby eliminating the possibility that he alerted the remaining jurors about the situation.

{¶ 27} Gaffin's first assignment of error is overruled.

### B. Ineffective Assistance of Counsel

{¶ 28} In his second assignment of error, Gaffin alleges numerous instances of ineffective assistance of counsel and claims that the cumulative effect of these errors deprived him of his right to effective assistance of counsel. Specifically, Gaffin alleges that defense counsel (1) breached his duty of loyalty; (2) failed to file any pre-trial motions to suppress, or object to, the forensic interviewer's report or the recording of her

interview with R.A.; (3) failed to file a motion to redact inadmissible portions of the forensic interview; (4) failed to secure independent expert testimony or effectively cross-examine the State's expert; (5) failed to give an opening statement; (6) failed to object to evidence of prior bad acts that were irrelevant to the charges against him; (7) failed to object to numerous instances of inadmissible hearsay testimony or objected without setting forth a basis for the objection; (8) argued for the admission of his polygraph results; (9) failed to object when the State's witnesses improperly vouched for R.A.'s credibility; and (10) allowed the State to cross-examine him as to the credibility of the State's witnesses.

### 1. Standard of Review

{¶ 29} Criminal defendants have a right to counsel, including a right to the effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), fn. 14. To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Accord State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d

810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14.

{¶ 30} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland* at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Quotation omitted.) *Id.* "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor,* 4th Dist. Washington No. 07CA11, 2008–Ohio–482, ¶ 10, citing *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio–6679, 860 N.E.2d 77, ¶ 61.

{¶ 31} "To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different." *State v. Walters*, 4th Dist. Washington Nos. 13CA33 and 13CA36, 2014-Ohio-4966, ¶ 24, citing *State v. White,* 82 Ohio St.3d 15, 23, 693 N.E.2d 772 (1998). "Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated." *Id*. "There are countless ways to provide effective assistance in any given case; therefore, judicial scrutiny of counsel's performance must be highly deferential." *Id.*

**2. Gaffin Failed to Show How He Was Prejudiced by Defense Counsel's Alleged Deficiencies; and Therefore, He Necessarily Failed to Establish a Claim of Ineffective Assistance of Counsel**

{¶ 32} Gaffin devotes his entire second assignment of error to establishing that defense counsel's performance fell below an objective standard of reasonableness. For example, he discusses how defense counsel should have objected to the admission of R.A.'s forensic interview; how defense counsel should have argued against the admission of his polygraph results; and how defense counsel should have objected when the State's witnesses vouched for R.A.'s credibility.

{¶ 33} But nowhere in Gaffin's second assignment of error does he discuss how he was prejudiced by these alleged deficiencies, i.e., how but for these errors, the result of his trial would have been different. Gaffin merely concludes that the cumulative effect of defense counsel's deficiencies deprived him of his right to effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution and the Ohio Constitution. This is insufficient to establish a claim of ineffective assistance of counsel. A defendant must also affirmatively demonstrate prejudice. *Walters* at ¶ 24. Prejudice cannot be assumed. *Id.*

{¶ 34} In *Strickland*, the United States Supreme Court emphasized, "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674. It explained,

Although we have discussed the performance component of an

ineffectiveness claim prior to the prejudice component, there is no reason

for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id.*

{¶ 35} Because Gaffin failed to show how he was prejudiced by defense counsel's alleged deficiencies, he necessarily failed to establish a claim of ineffective assistance of counsel; thus, we need not consider whether defense counsel's performance was deficient. Because Gaffin is unable to establish his specific claims of ineffective assistance of counsel, he is thus, unable to show a cumulative effect of errors.

{¶ 36} Gaffin's second assignment of error is overruled.

## IV. CONCLUSION

{¶ 37} Because Gaffin neither asked the trial court to examine the remaining jurors to determine whether they were affected by the misconduct nor expressed dissatisfaction with the trial court's explanation of the situation to the jury, he waived all but plain error; and the trial court did not commit plain error when it questioned the juror about the misconduct, sequestered the juror while it considered how to handle his

misconduct, excused the juror and replaced him with an alternate, and instructed the jury to begin deliberations anew.

{¶ 38} Furthermore, because Gaffin failed to show how he was prejudiced by defense counsel's alleged deficiencies, he necessarily failed to establish a claim of ineffective assistance of counsel. Gaffin thus is unable to show a cumulative effect of errors.

{¶ 39} Accordingly, we overrule Gaffin's assignments of error and affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and McFarland, J.: Concur in Judgment and Opinion.

For the Court

By: _____
　　　Marie Hoover, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**